UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL M. BARNES,

     Applicant,

v.                                                          CASE NO. 8:21-cv-1482-SDM-AEP

SECRETARY, Department of Corrections,

     Respondent.

_____/

## **ORDER**

     Barnes applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1)
and challenges his convictions for second-degree grand theft and money laundering.
Barnes is imprisoned for twelve years.  Numerous exhibits ("Respondent's Exhibit
__") support the response.  (Docs. 7-2, 22-2)  The application asserts seven grounds
for relief, each of which is meritless.

## I. **BACKGROUND**[1]

     Barnes was the business manager of an eye clinic in Polk County, Florida.  He
handled "personnel issues," billing, collections, and building maintenance.
(Respondent's Exhibit 39 at 233)  From 2007 to 2011, Barnes stole from the clinic.
For example, he used the company credit card (1) to buy plane tickets to Jamaica,
the Dominican Republic, New York City, and other locations, (2) to pay for gas, (3)

_____

[1] This summary of the facts derives from the trial transcript.  (Respondent's Exhibit 39)

to sponsor his son's Little League team, and (4) to buy gift cards worth approximately $20,000. The gift cards covered personal expenses, including visits to a chiropractor and a veterinary clinic. Also, Barnes paid himself unauthorized bonuses and raised his salary without permission.

Barnes's theft came to light in September 2011, when an Internal Revenue Service ("IRS") agent visited the clinic. The agent explained that the clinic "was supposed to have been garnishing [Barnes's] wages for the past six or seven months." (Respondent's Exhibit 39 at 236) Barnes admitted to the doctors that "he had not filed tax returns for three years," that the IRS "had finally caught up with him in February 2011," and that he had "intercepted" three garnishment notices sent to the clinic. (Respondent's Exhibit 38 at 333) The doctors began to investigate the clinic's finances. They discovered Barnes's unauthorized expenses, terminated him, and referred the matter to law enforcement.

Barnes was charged with scheme to defraud, first-degree grand theft ($100,000 or more), and money laundering.[2] (Respondent's Exhibit 2) Citing double-jeopardy concerns, the prosecution dropped the scheme-to-defraud count. (Respondent's Exhibit 5; Respondent's Exhibit 39 at 176–77; *see also Freeman v. State*, 262 So. 3d 863, 864 (Fla. 2d DCA 2019) ("[D]ual convictions for both scheme to defraud and grand theft violate double jeopardy when the convictions are based on the same course of conduct.")) The case went to trial. Barnes testified that he used the

---

[2] The money-laundering count rested on the allegation that Barnes "converted the [clinic's] funds to gift cards in order to conceal or disguise the nature, . . . ownership, or . . . control of the proceeds of the unlawful activity of grand theft." (Respondent's Exhibit 34 at 6)

company card only for business purposes, that he did not "steal from the [clinic] using gift cards," and that his raises and bonuses were "authorized by [his] employer." (Respondent's Exhibit 39 at 935–36) The jury found Barnes guilty of money laundering and second-degree grand theft ($20,000 or more but less than $100,000). (Respondent's Exhibit 3) He was sentenced to twelve years' imprisonment. (Respondent's Exhibit 4)

The appellate court affirmed the convictions without a written opinion. (Respondent's Exhibit 10) Barnes unsuccessfully moved for post-conviction relief under Florida Rule of Criminal Procedure 3.850 and Florida Rule of Appellate Procedure 9.141(d). (Respondent's Exhibits 17, 19, 23, 27, 30) This federal habeas application followed. (Doc. 1)

## II. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). Section 2254(d), which creates a highly deferential standard for federal court review of a state-court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power
> of a federal habeas court to grant a state prisoner's
> application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court.  Under §
> 2254(d)(1), the writ may issue only if one of the following
> two conditions is satisfied — the state court adjudication
> resulted in a decision that (1) "was contrary to . . . clearly
> established Federal law, as determined by the Supreme
> Court of the United States" or (2) "involved an
> unreasonable application of . . . clearly established Federal
> law, as determined by the Supreme Court of the United
> States."  Under the "contrary to" clause, a federal habeas
> court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case
> differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable[;] . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002).  "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562

U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical

point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question . . . ."); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a

reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

In *per curiam* decisions without written opinions, the appellate court affirmed Barnes's convictions and affirmed the denial of his Rule 3.850 motion for post-conviction relief. The appellate court's *per curiam* decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), *and Bishop v. Warden*, 726 F.3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state-court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

Barnes bears the burden of overcoming by clear and convincing evidence a state court's fact determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).

## III. <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Barnes claims ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Barnes must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment." *Strickland*, 466 U.S. at 691.  To meet this burden, Barnes must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

Barnes cannot meet his burden by showing that the avenue chosen by counsel proved unsuccessful.  *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

Sustaining a claim of ineffective assistance of counsel under Section 2254(d) is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. *See Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

In determining "reasonableness," Section 2254(d) authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry"

and not independently assessing whether counsel's actions were reasonable. *Putman v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001).

**<u>Grounds One and Two:</u>**

Barnes argues that trial counsel failed (1) to "properly" move for judgment of acquittal on the grand-theft count and (2) to raise a related objection to the jury instructions. (Doc. 1 at 5, 13) Barnes was charged with scheme to defraud, first-degree grand theft ($100,000 or more), and money laundering. (Respondent's Exhibit 2) The prosecution dropped the scheme-to-defraud count to avoid double-jeopardy issues. (Respondent's Exhibit 5; Respondent's Exhibit 39 at 176–77) The jury convicted Barnes of money laundering and second-degree grand theft ($20,000 or more but less than $100,000). (Respondent's Exhibit 3) As Barnes points out, "no single . . . unauthorized transaction [equaled or] exceeded $20,000." (Doc. 1 at 2) The jury was instructed, however, that "[a]mounts of value of separate properties involved in thefts committed pursuant to one scheme or course of conduct . . . may be added together to determine the total value of the theft." (Respondent's Exhibit 39 at 687)

Barnes contends that the jury should not have aggregated his transactions "to determine the total value of the theft." (Doc. 1 at 6) Under Florida law, aggregation is impermissible "absent an allegation in the charging document that [the separate] thefts occurred as part of the same scheme or course of conduct." *Sebastiano v. State*, 14 So. 3d 1160, 1164 (Fla. 4th DCA 2009). With the dismissal of the scheme-to-defraud count, the information no longer alleged that Barnes's thefts occurred as part

of the same scheme or course of conduct.  (Respondent's Exhibit 2)  This pleading defect allegedly meant that the jury could not aggregate Barnes's transactions.  And because no single transaction equaled or exceeded $20,000, Barnes claims that he "could only be found guilty of third-degree grand theft," which applies to property valued at $300 or more.  (Doc. 1 at 6)

According to Barnes, had counsel raised this argument at trial, the court would have (1) declined to instruct the jury that aggregation was permissible and (2) "reduced the charge to third-degree . . . grand theft."  (Doc. 1 at 6, 15)  Barnes notes that "he is now serving a twelve-year prison sentence for second-degree . . . grand theft, and had he been convicted of only third-degree . . . grand theft, the maximum sentence would have been five years' imprisonment."  (Doc. 1 at 7)

The post-conviction court reasonably rejected this claim for lack of prejudice.  (Respondent's Exhibit 27 at 1–2)  "The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different."  *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Instead, "counsel's errors [must be] so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  "Applying AEDPA to *Strickland*'s prejudice standard, [the district court] must decide whether the state court's conclusion that [counsel's]

performance . . . didn't prejudice [Barnes] — that there was no substantial likelihood of a different result — was so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Mungin v. Sec'y, Fla. Dep't of Corr.*, 89 F.4th 1308, 1317 (11th Cir. 2024).

Barnes cannot meet this demanding standard.  A jury may aggregate theft amounts only if the information alleges that the separate thefts "occurred as part of the same scheme or course of conduct." *Sebastiano*, 14 So. 3d at 1164.  The operative information contained no such allegation.  But this pleading defect "could have been corrected had it been properly raised at trial." *Sebastiano*, 14 So. 3d at 1163.  The prosecution "may amend [the] information pre-trial or even during trial, either as to substantive or non-substantive matters, unless the defendant is prejudiced thereby." *Davis v. State*, 313 So. 3d 835, 837 (Fla. 2d DCA 2021).  "Prejudice occurs where the amendment constitutes the charging of a different crime or changes the essential elements of the charged offense." *Gerome v. State*, 306 So. 3d 314, 317 (Fla. 3d DCA 2020).  Prejudice does not exist "[w]here the defendant is afforded an adequate opportunity to investigate the evidence and prepare a defense." *Davis*, 313 So. 3d at 837.

Had counsel raised the aggregation issue at trial, the prosecution could have amended the information to allege that the thefts "occurred as part of the same scheme or course of conduct."  This amendment would not have "constitute[d] the charging of a different crime or change[d] the essential elements of the charged offense." *Gerome*, 306 So. 3d at 317.  Nor would the amendment have prejudiced

Barnes's ability "to investigate the evidence and prepare a defense." *Davis*, 313 So. 3d at 837.

Barnes knew from the outset that the prosecution intended to aggregate the theft amounts. The information alleged that from August 2007 to December 2011, Barnes stole $100,000 or more from the clinic. (Respondent's Exhibit 2) The arrest affidavit explained that during these four years, Barnes engaged in "an ongoing course of conduct" "by utilizing the company credit card [and] paying himself excess bonuses and salary." (Respondent's Exhibit 34 at 1) The affidavit divided the unauthorized expenses into several categories, including $14,948 in "retail purchases," $6,806 in car rentals, $12,145 in "sport-related charges," $5,753 in "restaurant charges," $19,918 in airline tickets, and $29,053 in excess bonuses. (Respondent's Exhibit 34 at 2–3) No single transaction equaled or exceeded $100,000. Even after the scheme-to-defraud count was dropped, the prosecution argued in opening statements that Barnes made "a large [number] of unauthorized transactions," including bonuses of "$11,000 here, $7,000 there, $12,000 here, $8,000 there." (Respondent's Exhibit 39 at 212, 214) Thus, Barnes "was on notice at all times" that the grand-theft count rested on an aggregation of his transactions over the four-year offense period. *State v. Garcia*, 692 So. 2d 984, 986 (Fla. 3d DCA 1997).

Had Barnes "objected to the language of the charging document, the state could have amended the information, even mid-trial, without prejudicing [his] ability to mount [a] defense." *Nava v. State*, 379 So. 3d 1220, 1225 (Fla. 1st DCA 2024). As noted above, Barnes testified that he used the company card only for business

purposes, that he did not "steal from the [clinic] using gift cards," and that his raises and bonuses were "authorized by [his] employer." (Respondent's Exhibit 39 at 935–36) Barnes does not explain how his defense would have changed had the prosecution amended the information to allege an ongoing scheme. Consequently, the pleading defect "could have been corrected had it been properly raised at trial," and Barnes suffered no prejudice from counsel's failure to raise the issue.[3] *Sebastiano*, 14 So. 3d at 1163.

**Ground Three:**

Barnes faults trial counsel for failing to either (1) "obtain copies of emails" from his work computer's hard drive or (2) argue that Dr. David Misch, the founder of the eye clinic, "destroyed" the emails. (Doc. 1 at 17) Barnes allegedly told counsel that Dr. Misch and another doctor at the clinic had "sent him emails confirming [his] raises [and bonuses] and [his] authorization to use [credit card] points." (Doc. 1 at 17) These emails "predate[d] 2008." (Doc. 1 at 17) During the investigation, law enforcement extracted some emails from Barnes's hard drive. (Respondent's Exhibit 39 at 407) Barnes alleges, however, that the extracted emails were from 2008 onward and thus did not include the messages "providing him with authorization." (Doc. 1 at 17) After speaking with Barnes, counsel contacted the state and learned that "the hard drive had been wiped clean." (Doc. 1 at 17)

---

[3] Barnes's allegation of ineffective assistance of appellate counsel is addressed below in the discussion of ground five.

Barnes argues that had counsel "properly obtained" the pre-2008 emails, he could have presented the jury with "conclusive proof that [his] actions were authorized by the clinic." (Doc. 1 at 17)  If the pre-2008 emails were unavailable, counsel allegedly should have argued to the jury that Dr. Misch had "destroyed" the emails.  (Doc. 1 at 18)

The post-conviction court reasonably rejected this claim.  (Respondent's Exhibit 27 at 2)  Barnes does not explain how counsel could have obtained the emails if the hard drive had already been "wiped clean."  And Barnes offers no basis to question the state's assertion that the hard drive was empty.  Counsel was not deficient for failing to obtain evidence that no longer existed.  *See Lewis v. Horn*, 581 F.3d 92, 114 (3d Cir. 2009) (counsel not deficient for failing to present evidence that "does not exist"); *Harbour v. McDonough*, No. 3:06-cv-3-LAC-EMT, 2007 WL 1120386, at *12 (N.D. Fla. Apr. 13, 2007) ("[C]ounsel cannot be deemed deficient for failing to seek production of non-existent evidence.").  Moreover, Barnes offers no support for his assertion that Dr. Misch "destroyed" the emails.  As the post-conviction court explained, this "allegation . . . is speculative at best."  (Respondent's Exhibit 27 at 2)  Speculation is insufficient to warrant habeas relief.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1992) (explaining that "conclusory allegations unsupported by specifics" cannot establish an ineffective-assistance claim); *Freeman v. United States*, No. 16-17185-J, 2018 WL 6318358, at *3 (11th Cir. July 31, 2018) (rejecting habeas claim because petitioner's "suggestion that the government destroyed or tampered with exculpatory evidence [was] pure speculation").

**Ground Four:**

Barnes faults trial counsel for not arguing that his convictions for grand theft and money laundering violated double jeopardy. (Doc. 1 at 20) Barnes's double-jeopardy argument is meritless. Thus, the post-conviction court correctly rejected this claim. (Respondent's Exhibit 27 at 2)

"Florida courts apply the 'same elements' test from *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine whether multiple convictions violate double jeopardy." *Simpson v. U.S. Att'y Gen.*, 7 F.4th 1046, 1056 (11th Cir. 2021). Under *Blockburger*, two offenses are different for double-jeopardy purposes "if each requires proof of an additional fact which the other does not." *United States v. Smith*, 532 F.3d 1125, 1128 (11th Cir. 2008). "[I]f an offense requires proof of an element that the other offense does not, [a court] need look no further in determining that the prosecution of both offenses does not offend [double jeopardy]." *United States v. Davis*, 854 F.3d 1276, 1286 (11th Cir. 2017). "The *Blockburger* test is applied by analysis of the elements of the offense charged, not by focusing on the evidence adduced at trial." *United States v. Boldin*, 772 F.2d 719, 726 (11th Cir. 1985).

Barnes's convictions for grand theft and money laundering did not violate double jeopardy. A defendant commits grand theft by "(1) knowingly (2) obtaining or using, or endeavoring to obtain or use, property of another (3) with intent to deprive the person of a right to the property or a benefit therefrom, or to appropriate the property to one's own use or to the use of any person not entitled thereto." *Pizzo v. State*, 945 So. 2d 1203, 1207 (Fla. 2006). By contrast, money laundering "requires

proof the [defendant] knowingly conducted or attempted to conduct a financial

transaction involving the proceeds of 'specified unlawful activity,' for the purpose of

. . . concealing or disguising the nature, location, source, ownership, or control of

proceeds." *Perez v. Tony*, 383 So. 3d 525, 531 (Fla. 4th DCA 2024). "Specified

unlawful activity" covers a variety of offenses, including theft, illegal gambling, and

drug trafficking. Fla. Stat. §§ 896.101(2)(h), 895.02(8).

   Grand theft and money laundering satisfy *Blockburger* because each offense

requires proof of facts that the other does not. Grand theft requires proof that a

defendant deprived somebody of his property. Money laundering contains no such

element. Instead, a defendant commits money laundering when he uses the proceeds

of "specified unlawful activity" to "conduct a financial transaction designed to . . .

conceal . . . the unlawful activity." *Mitchell v. Crews*, No. 3:12-cv-356-LC-CJK, 2014

WL 3720829, at *7 (N.D. Fla. July 28, 2014). The unlawful activity need not be

theft. Drug trafficking, illegal gambling, and several other offenses can support a

money-laundering conviction. Fla. Stat. §§ 896.101(2)(h), 895.02(8). Thus, a

defendant can commit grand theft without committing money laundering, and a

defendant can commit money laundering without committing grand theft.

   No double-jeopardy violation occurred in this case. Consequently, counsel

was not deficient for failing to raise Barnes's meritless argument. *See Freeman v. Att'y

Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (noting that counsel "cannot be deficient

for failing to raise a meritless claim").

**Ground Five:**

Barnes contends that appellate counsel was deficient for failing to argue on direct appeal that "the verdict form allowed the jury to return a non-unanimous verdict for the theft count." (Doc. 1 at 21)  The verdict form did not require the jury to "specify which alleged unauthorized transactions it was relying on to find [Barnes] guilty." (Doc. 1 at 21)  Thus, Barnes contends that the verdict form left unclear whether "the jury reached a unanimous decision as to which transactions constituted the theft offense." (Doc. 1 at 23)  Barnes separately faults appellate counsel for failing to challenge the instruction that allowed the jury to aggregate the value of his transactions. (Doc. 1 at 16)  The appellate court rejected Barnes's ineffective-assistance claims in an unelaborated decision. (Respondent's Exhibit 19)

Barnes is entitled to no relief.  At trial, Barnes objected to neither the verdict form nor the jury instructions.  Consequently, the claims for ineffective assistance of appellate counsel turn on whether the alleged errors were "fundamental" under Florida law.  If the alleged errors were "not fundamental, then [Barnes's] appellate counsel would have been procedurally barred from raising [them] on appeal, and so he could not have been ineffective for failing to raise [them]." *Scott v. Sec'y, Dep't of Corr.*, 857 F. App'x 548, 551 (11th Cir. 2021).

By rejecting Barnes's ineffective-assistance claims in an unelaborated order, the appellate court "implicitly" determined that the verdict form and the instructions were not fundamentally erroneous.  *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) (holding that, "[b]ecause the Florida Second District Court of

Appeal denied [petitioner's] state habeas petition" without explanation, "the Florida court has already determined, albeit implicitly, that the error was not fundamental error"). "[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is." *Pinkney*, 876 F.3d at 1299. Therefore, the district court "must defer to the [state] court's underlying determination[ ]" that the trial court did not commit fundamental error. *Pinkney*, 876 F.3d at 1297–98. Because the verdict form and the instructions did not constitute fundamental error, "appellate counsel would have been procedurally barred from [raising these issues] on appeal." *Scott*, 857 F. App'x at 551. Counsel "will not be held to have performed deficiently" where, as here, she "fail[s] to perform a futile act, one that would not have gotten [her] client any relief." *Pinkney*, 876 F.3d at 1297.

## Ground Six:

Barnes argues that the trial court violated the Confrontation Clause and his right to a fair trial by barring him from impeaching lead investigator David Lyon with "insurance documents." (Doc. 1 at 24) After discovering the theft, the eye clinic filed an insurance claim based on Barnes's "misconduct." (Respondent's Exhibit 39 at 488) The insurer hired a forensic accounting firm to "conduct[ ] an investigation" and ultimately paid the clinic $150,000. (Respondent's Exhibit 39 at 488; Respondent's Exhibit 41 at 7) At trial, counsel tried to confront Lyon with a letter he had received from the forensic accounting firm. (Respondent's Exhibit 39 at 483, 486; Respondent's Exhibit 52) The letter informed Lyon of the insurance

investigation and asked to "discuss th[e] matter with" him.  (Respondent's Exhibit 52)

The prosecution objected that any insurance documents were irrelevant and unduly prejudicial.  (Respondent's Exhibit 39 at 484)  Counsel responded that the letter showed Lyon conducted a "bias[ed]" and inadequate investigation because he "didn't follow up" with the forensic accounting firm.  (Respondent's Exhibit 39 at 491)  The court sustained the objection and ruled that "information concerning . . . insurance" was "irrelevant."  (Respondent's Exhibit 39 at 491)  The court noted that such evidence was "probably prejudicial to both sides" because "the insurance company did [its] own investigation[,] found merit in [the allegations against Barnes,] and . . . paid the claim."  (Respondent's Exhibit 39 at 492)  Barnes challenged this ruling on direct appeal, and the appellate court affirmed in an unelaborated decision.  (Respondent's Exhibit 8 at 32–33; Respondent's Exhibit 10)

Barnes is entitled to no relief because he cannot show that the exclusion of insurance documents caused "actual prejudice."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  State prisoners "are not entitled to habeas relief based on trial error unless they can establish that [the error] resulted in actual prejudice."  *Brecht*, 507 U.S. at 637.  "To show prejudice under *Brecht*, there must be more than a reasonable possibility that the error contributed to the conviction or sentence."  *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1114 (11th Cir. 2012).  An error "is likely to be harmless under the *Brecht* standard where there is significant corroborating evidence or where other evidence of guilt is overwhelming."  *Mansfield v. Sec'y, Dep't of Corr.*,

679 F.3d 1301, 1313 (11th Cir. 2012).  The *Brecht* standard "is extremely demanding."  *Johnson v. Sec'y, Fla. Dep't of Corr.*, 132 F.4th 1309, 1314 (11th Cir. 2025).

Barnes fails to establish actual prejudice.  He contends that the insurance documents would have shown that Lyon "conducted an inadequate, cursory, and faulty investigation."  (Doc. 1 at 25)  But Barnes points to no documents that criticized Lyon's investigation.  And Lyon's alleged failure to "follow up" with the forensic accounting firm does not prove that his investigation was deficient.  Regardless, any evidence about the insurance investigation would likely have opened the door to damaging rebuttal evidence.  *See Henderson v. State*, 135 So. 3d 472, 476 (Fla. 2d DCA 2014) ("[T]he concept of 'opening the door' allows the admission of otherwise inadmissible testimony to qualify, explain, or limit testimony or evidence previously admitted.").  Specifically, the prosecution could have shown that the insurer agreed to pay a $150,000 claim for Barnes's "misconduct."  (Respondent's Exhibit 39 at 488; Respondent's Exhibit 41 at 7)  Moreover, as recounted above, the prosecution presented "significant corroborating evidence" of Barnes's guilt.  *Mansfield*, 679 F.3d at 1313.  Thus, Barnes cannot show "more than a reasonable possibility that the [exclusion of insurance documents] contributed to the conviction."[4]  *Trepal*, 684 F.3d at 1114.

---

[4] The respondent argues that ground six is procedurally defaulted, but "a federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."  *Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020).

**Ground Seven:**

Lastly, Barnes contends that the "cumulative effect" of the errors alleged in the application deprived him of a "fair trial." (Doc. 1 at 25)  "Under the cumulative-error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014). A cumulative-error claim "must fail," however, where none of the "individual claims of error" has "any merit."  *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).  Because each claim of error lacks merit, Barnes cannot show cumulative prejudicial effect.

## IV. CONCLUSION

Barnes's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Barnes and **CLOSE** this case.

### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Barnes fails to demonstrate either a substantial showing of the denial of a constitutional right or that reasonable jurists would debate both the merits of the grounds and the procedural issues, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  Barnes must obtain permission from the court of appeals to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on July 9, 2025.



STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE